UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SADIYA ALI, | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | No. 2:18-cv-00109-JAW |
| | ) | |
| LONG CREEK YOUTH | ) | |
| DEVELOPMENT CENTER, et al., | ) | |
| | ) | |
| Defendants | ) | |

### MEMORANDUM DECISION AND ORDER ON DISCOVERY DISPUTE

In this civil rights action, the plaintiff, Sadiya Ali, seeks to compel the production by defendants Long Creek Youth Development Center ("Long Creek") and the Maine Department of Corrections (together, the "State Defendants") of internal documents generated after the incident giving rise to this action and by Correct Care Solutions, LLC ("CCS") of peer evaluations of defendants David Drohan, D.D.S., and N.P. Kim Foster. Following oral argument and post-argument letter briefs, *see* ECF Nos. 45-48, 58-59, I grant the plaintiff's request, concluding that the State Defendants and CCS fail to meet their burden of demonstrating that the self-critical analysis and peer review privileges upon which they rely should be recognized or, as to the former, even if recognized, would shield the documents in dispute.

### I. Applicable Legal Standard

Rule 26 of the Federal Rules of Civil Procedure outlines general provisions governing discovery in a civil action:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"[A] party resisting discovery has the burden of showing some sufficient reason why discovery should not be allowed[.]" *Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.,* 730 F. Supp. 1165, 1186 (D. Mass. 1989) (citation and internal quotation marks omitted). In addition, the proponent of a privilege bears the burden of demonstrating entitlement to its protection. *See, e.g., In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.) v. United States,* 348 F.3d 16, 22 (1st Cir. 2003) ("Despite a grand jury's vaunted right to every man's evidence, it must, nevertheless, respect a valid claim of privilege. But the party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived.") (citations omitted).

**II. Background**

Ali alleges that two guards used excessive force against her 11-year-old son, "A.I.," while he was in their custody. *See* Complaint and Demand for Jury Trial ("Compl.") (ECF No. 1) ¶ 2. She also alleges that the defendants failed to treat A.I.'s Attention Deficit Hyperactivity Disorder during his detention and withheld medical treatment following the alleged use of excessive force. *See id.* ¶¶ 2-6. She brings three federal claims (for the use of excessive force in violation of the Fourteenth Amendment, deliberately indifferent medical care in violation of the Fourteenth Amendment, and disability discrimination in violation of the Americans with Disabilities Act and the Rehabilitation Act) and two state law causes of action (for the use of excessive force in violation of Article I, Sections 1, 6, and 6-A of the Maine Constitution, and the negligent use of force, in violation of 14 M.R.S.A. §§ 8101-18). *See id.* ¶¶ 118-35.

The State Defendants invoke the self-critical analysis privilege as the basis for withholding documents and testimony responsive to Ali's requests for "any and all documents concerning A.I., including . . . internal investigations[,]" ECF No. 45 at 1, and "any actions taken in response" to a September 2017 Center for Children's Law and Policy ("CCLP") report on Long Creek, ECF No. 52-1, attached to ECF No. 52, at 2, including (i) a "Supervisor's Review – Use of Physical Force" pertaining to the incident involving A.I., ECF No. 46 at [1], and (ii) a "working spreadsheet" created in response to the CCLP report.[1] CCS invokes the peer review privilege as the basis for withholding requested peer review materials concerning two of the individual defendants, David Drohan, D.D.S., and Nurse Practitioner Kimberly Foster. *See* ECF No. 58 at 1.

### III. Self-Critical Analysis Privilege

#### A. Existence of Privilege

The State Defendants cite two cases in support of their bid for recognition of a privilege for self-critical analysis: *Tice v. Am. Airlines*, 192 F.R.D. 270 (N.D. Ill. 2000), and *In re Block Island Fishing, Inc.*, 323 F. Supp.3d 158 (D. Mass. 2018). *See* ECF No. 46 at [2]. They assert that "[t]he privilege is designed to protect parties that engage in post-incident assessments designed to increase safety and decrease the likelihood of repeated incidents[,]" and that "[c]ourts applying the privilege recognize that an organization's incentive for engaging in frank evaluation of incidents decreases considerably if it knows the evaluation may be used against it in subsequent litigation." *Id.*

However, the State Defendants' own authorities provide scant support for the proposition that this court should recognize such a privilege. In *Tice*, the court merely assumed "that federal

---

[1] The parties' letter briefs contain no mention of the spreadsheet, which was discovered after the completion of briefing on the self-critical analysis privilege. However, the State Defendants invoked the privilege with respect to the spreadsheet during a November 29, 2018, hearing, arguing that compelling production of the spreadsheet would have an impermissible chilling effect.

common law recognizes the self-critical analysis privilege[.]" *Tice*, 192 F.R.D. at 272. And, in *Block Island Fishing*, the court acknowledged that "[t]he self-critical analysis privilege is not yet clearly established in the First Circuit or elsewhere" and that, "[w]ithin the First Circuit, one district court has applied the privilege to protect certain material from discovery[.]" *Block Island Fishing*, 323 F. Supp.3d at 160 (citing *O'Connor v. Chrysler Corp.*, 86 F.R.D. 211, 218 (D. Mass. 1980)).

Supreme Court precedent also militates against the recognition of a self-critical analysis privilege, particularly in these circumstances. In *Univ. of Pa. v. EEOC*, 493 U.S. 182 (1990), the Supreme Court emphasized that courts should recognize a privilege only when "it promotes sufficiently important interests to outweigh the need for probative evidence[,]" observing that, because such privileges "contravene the fundamental principle that the public has a right to every man's evidence, any such privilege must be strictly construed." *Univ. of Pa.,* 493 U.S. at 189 (citations and internal punctuation omitted).

The State Defendants contend that *Univ. of Pa.* is distinguishable in that it involved a private entity and documents generated "before the event . . . that formed the basis of the complaint," whereas, in this case, the defendants are public entities and the documents at issue were generated after the event. *See* ECF No. 47 at [1]-[2]. The first distinction cuts against, rather than in favor of, the State Defendants' position, and the second is immaterial.

Unlike *Block Island Fishing* and *Tice*, this case involves the assertion of the privilege by public entities. *Compare Block Island Fishing*, 323 F. Supp.3d at 160 (claimant, the owner of a tanker, invoked privilege in action brought by owner of a lobster fishing vessel for exoneration or limitation of liability arising from collision between tanker and vessel); *Tice*, 192 F.R.D. at 271-72 (defendant airline invoked privilege in age discrimination action by airline pilots). The

4

assertion of the privilege by public entities heightens, rather than diminishes, the importance of the discovery of probative evidence. *Cf. Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D. Cal. 1995) (declining to recognize self-critical analysis privilege to shield internal police department investigatory documents and witness statements; observing, "[T]he notion that police departments should be able to completely shield their internal affairs investigatory process from the public offends basic notions of openness and public confidence in our system of justice").

The second, temporal distinction is immaterial. Regardless of whether self-analyses are generated before or after an event, the prospect of their disclosure presumably carries the same risk of a chilling effect on future self-analysis.

In short, the State Defendants fail to meet their burden of demonstrating that recognition of a self-critical analysis privilege "promotes sufficiently important interests to outweigh the need for probative evidence[.]" *Univ. of Pa.*, 493 U.S. at 189 (citation and internal quotation marks omitted). Hence, on the showing made, I decline to recognize it.

In the alternative, even if I were to recognize the privilege, the State Defendants fail to demonstrate that it would apply on the facts of this case. As the State Defendants note, *see* ECF No. 46 at [2], the court in *Block Island Fishing* identified five predicates for application of the self-analysis privilege: (i) "[t]he analysis must be submitted as part of a mandatory government report;" (ii) "[i]t must set forth a retrospective, post-incident evaluation;" (iii) "[t]he privilege is limited to subjective analysis rather than objective data;" (iv) "[t]he public interest is served by protecting the flow of information subject to the privilege;" and (v) "[t]he reporting agency must have an expectation of privacy in the analysis[,]" *id.*; *see also Block Island Fishing*, 323 F. Supp.3d at 162 n.3.

The State Defendants argue that the Supervisor's Review in question is protected by the self-critical analysis privilege because (i) the report's preparation and submission were required by an internal Department of Corrections policy, (ii) the report was a post-event review, not a prospective analysis of procedures or practices, (iii) the State Defendants redacted only those portions of the report containing the subjective analyses and assessments of supervisory personnel, (iv) the public "clearly has an interest in eliminating the use of excessive force by officers in correctional facilities[,]" and frank evaluation likely would be chilled if such reports were subject to discovery, and (v) the report is subject to multiple confidentiality policies. ECF No. 46 at [2]-[3]. At the November 29, 2018, hearing, the State Defendants added that the discovery of the spreadsheet, which they expected to be undiscoverable, would have a particularly great chilling effect.

The chilling effect of production is central to the State Defendants' objection to the discovery sought, but the argument falls flat under the circumstances herein.

In this case, the State Defendants shared the Supervisor's Review with a third party, the CCLP, which published, in its September 2017 report, what the State Defendants' counsel acknowledged at the November 29, 2018, hearing was the gist of the content that his clients sought to shield by application of the privilege. *See* ECF No. 53-2 (excerpt from CCLP report), attached to ECF No. 53, at 56. The State Defendants, thus, cannot argue that they had an expectation of privacy in those contents. Even if they could, they have, in any event, waived any privilege by disclosing the contents of the document to a third party.

Turning to the spreadsheet, the State Defendants have presented no evidence that this document was "submitted as part of a mandatory government report[.]" ECF No. 46 at [2]. Nor is there evidence that the spreadsheet sets forth "a retrospective, post-incident evaluation." *Id.* To

the contrary, the State Defendants' description of the spreadsheet at hearing suggests that it is, instead, a forward-looking prescription for change.

Hence, even if the privilege were to be recognized, the State Defendants have failed to meet their burden to demonstrate that it applies in these circumstances.

## IV. Peer Review Privilege

CCS seeks to shield peer review materials that it prepared regarding Dr. Drohan and Nurse Practitioner Foster on the basis that this court should recognize and apply a Maine peer review privilege pursuant to Federal Rule of Evidence 501 or recognize a standalone federal common-law peer review privilege. *See* ECF No. 58. For the reasons that follow, I am unpersuaded.[2]

### a. Maine Law Privilege

The application of state law privileges in federal cases is governed by Rule 501 of the Federal Rules of Evidence. *See, e.g., Thayer v. E. Me. Med. Ctr.,* No. 1:09-cv-19-B-S, 2009 WL 1686673, at *2 (D. Me. June 16, 2009). "Where a federal civil action involves combined state and federal law claims, as here, and the asserted privilege is relevant to both claims, federal courts have consistently ruled that privileges are governed by federal law, not state law." *Green v. Fulton,* 157 F.R.D. 136, 139 (D. Me. 1994). "State privilege law should govern in combined state-federal cases only when the state law issues predominate over the federal issues, a situation that poses a real danger of forum shopping." *Id.*

Here, the plaintiff's state law claims do not predominate over her federal claims. *See generally* Compl.; *see also, e.g., Green,* 157 F.R.D. at 139 (while two of three counts were state law claims, gravamen of complaint was violation of plaintiff's federal constitutional right to be

---

[2] CCS objects to the production of the peer review materials on two additional bases: that they are irrelevant and confidential pursuant to 24 M.R.S.A. § 2510-A. The documents plainly are relevant. The providers with respect to whom Ali seeks information are named defendants, *see* Compl. ¶¶ 16-17, and their job performance is directly at issue in this case, *see, e.g., id.* ¶¶ 123-24. That the documents are confidential poses no obstacle to their production when, as here, a confidentiality order has been entered. *See* ECF No. 20.

7

free from excessive force). In cases in which state law claims do not predominate, "[t]he First Circuit has adopted a balancing test, weighing the respective federal and state interests, for determining when the federal common law should recognize state evidentiary privileges as a matter of comity in federal question cases." *Id.* at 139-40 (citing *In re Hampers,* 651 F.2d 19, 22 (1st Cir. 1981)).

Pursuant to the *Hampers* analysis, the federal court must determine, first, whether the state court would recognize an evidentiary privilege and, second, whether that privilege is "intrinsically meritorious." *Id.* at 140 (quoting *Hampers,* 651 F.2d at 22). The latter analysis entails consideration of four factors: (i) "whether the communications originate in a confidence that they will not be disclosed[,]" (ii) "whether this element of confidentiality is essential to the full and satisfactory maintenance of the relation between the parties[,]" (iii) whether the relationship is "a vital one" that "ought to be sedulously fostered[,]" and (iv) "whether the injury that would inure to the relation by the disclosure of the communications (would be) greater than the benefit thereby gained for the correct disposal of litigation." *Hampers,* 651 F.2d at 23 (citations and internal quotation marks omitted).

CCS, whose burden it is to demonstrate the application of a privilege, *see, e.g., Keeper of Records*, 348 F.3d at 22, fails to demonstrate why, pursuant to the *Hampers* test, the Maine professional competence review records privilege should be applied in this case. Assuming *arguendo* that CCS can meet the first prong of the *Hampers* analysis, the privilege fails to meet the second prong because it is not "intrinsically meritorious."

Setting aside the first three factors of the second prong, which collectively focus on injury to the parties' relationship, CCS has not argued – let alone shown – that the fourth factor weighs in its favor. *See* ECF No. 58 at 3. Instead, CCS asserts that the plaintiff fails to articulate how the

8

peer review materials sought are relevant, or likely to produce relevant evidence, and quotes a case from the United States District Court for the Northern District of Illinois for the proposition that the peer review privilege implicates policy interests that "are as substantial as any that can be imagined." ECF No. 58 at 3 (quoting *Sevilla v. United States*, 852 F. Supp. 2d 1057, 1068-69 (N.D. Ill. 2012)).

For three reasons, these points are unavailing. First, as discussed above, CCS has not shown that the requested materials are irrelevant, thus failing to carry its burden of showing why discovery should not be allowed. Second, while CCS emphasizes the importance of the interests protected by the peer review privilege, it fails to articulate why the alleged injury inflicted by disclosure of the Drohan and Foster peer review materials outweighs the benefit gained by their disclosure. Finally, CCS does not attempt to distinguish this court's caselaw declining to recognize a Maine peer review privilege in federal civil rights cases.

As this court has previously observed, the nature of the underlying claims is highly relevant to analysis of whether to recognize Maine's peer review privilege pursuant to Federal Rule of Evidence 501. *See, e.g.*, *Madigan v. Webber Hosp. Ass'n*, No. 2:11-cv-94-JAW, 2012 WL 664754, at *5 (D. Me. Feb. 15, 2012) (citing *Marshall v. Spectrum Med. Grp.*, 198 F.R.D. 1, 5 (D. Me. 2000)).

In *Adkins v. Christie*, 488 F.3d 1324 (11th Cir. 2007), the United States Court of Appeals for the Eleventh Circuit joined the United States Courts of Appeals for the Fourth and Seventh Circuits in declining to recognize a peer review privilege in federal civil rights cases. *See Adkins*, 488 F.3d at 1326. This court, citing *Adkins*, declined to recognize and apply Maine's peer review privilege in a federal civil rights case. *See Thayer*, 2009 WL 1686673, at *2 ("[T]he presumption against privileges is not overcome when the medical peer review privilege is weighed against the

discovery of evidence necessary to support the potential vindication of important federal rights, such as the rights protected by Title VII of the Civil Rights Act of 1964, and . . . the interests served by the privilege can be preserved through means falling short of a total ban on discovery.").

As noted, this too is a civil rights case: Ali invokes the federal Civil Rights Act, 42 U.S.C. § 1983, in seeking redress from CCS, Dr. Drohan, and Nurse Practitioner Foster for their alleged deliberate indifference to her son's medical needs in violation of his Fourteenth Amendment rights. *See* Compl. ¶¶ 122-24. Yet, CCS articulates no basis on which to distinguish this case from *Thayer*, and I perceive none.

Because CCS has failed to show that the Maine state peer review privilege is intrinsically meritorious, I decline to apply it in this action.

### b. Federal Common Law Privilege

In *Univ. of Pa*, the Supreme Court expressly declined "to create a new privilege against the disclosure of peer review materials." *Univ. of Pa*., 493 U.S. at 189. CCS nonetheless asks that this court recognize such a privilege here given Congress's subsequent passage of legislation that it argues supports the recognition of that privilege, the Patient Safety Quality Improvement Act of 2005 ("PSQIA"), 42 U.S.C. § 299b-21 *et seq*. *See* ECF No. 58 at 2. I decline to do so.

In *Univ. of Pa.*, an associate professor sued the university after being denied tenure, alleging discrimination on the basis of her race, sex, and national origin. *See Univ. of Pa*., 493 U.S. at 185. The university invoked peer review privilege as a basis for withholding tenure review files concerning the plaintiff and five male peers. *See id*. at 186-88. In declining to recognize a federal common law peer review privilege, the Supreme Court noted that courts should be cautious about creating new privileges, recognizing them only when doing so "promotes sufficiently important interests to outweigh the need for probative evidence[.]" *Id*. at 189 (citation and internal quotation marks omitted). The Court was "especially reluctant to recognize a privilege in an area

where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *Id.*

CCS argues that the landscape changed when Congress enacted the PSQIA, which "announce[d] a more general approval of the medical peer review process and more sweeping evidentiary protections for materials used therein." ECF No. 58 at 2 (quoting *Tep v. Southcoast Hosps. Grp., Inc.*, Civil Action No. 13-11887-LTS, 2014 WL 6873137, at *2 (D. Mass. Dec. 4. 2014)).

Nonetheless, the PSQIA is narrowly tailored to protect only material that is prepared for, and reported to, a patient safety organization or is prepared by the patient safety organization itself. *See* 42 U.S.C. § 299b-21(7)(A)(i). The core mission of patient safety organizations under the PSQIA is "to improve patient safety and the quality of health care delivery." *Id.* § 299b-24(b)(1)(A).

As Ali notes, *see* ECF No. 59 at 2, CCS asserts that it provided the records at issue to its patient safety organization but fails to show that the records were prepared "for" that organization, *see* ECF No. 58 at 2. CCS, therefore, fails to demonstrate that it is entitled to the protection of the statutory peer review privilege created by the PSQIA.

CCS also falls short of making a persuasive case for recognition of a federal peer review privilege broader than that provided by the PSQIA. It is true that, in *Tep*, the United States District Court for the District of Massachusetts did precisely that, in part on the strength of the passage of the PSQIA. *See Tep*, 2014 WL 6873137, at *5 ("Although the privilege created in the PSQIA does not apply directly, it supports creation of a federal common law privilege applicable in this action."). However, the *Tep* court did so because the plaintiff had asserted a claim analogous to a medical malpractice claim, namely, that the hospital involved in his wife's emergency medical

11

care at the time of her death had violated the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), which "restricts when hospitals may transfer individuals presenting with emergency medical conditions." *Id*. at *1, 5. In so doing, the *Tep* court acknowledged that, "[w]here the federal claim alleges something unrelated to malpractice, such as employment discrimination, courts have determined the privilege would undermine other important federal interests, such as rooting out invidious discrimination." *Id*. at *4.

This case falls squarely into the category of cases implicating important federal interests, materially distinguishing it from *Tep*. Indeed, in a prison conditions case similar to this one, the United States District Court for the Middle District of Alabama distinguished *Tep* on that basis, observing that "[n]early all" of the cases recognizing a peer review privilege in the wake of the PSQIA's passage, including *Tep*, "involve[d] medical malpractice claims brought under the Federal Tort Claims Act (FTCA) – quintessentially private damages actions in which no public or federal interest is implicated[.]" *Dunn v. Dunn*, 163 F. Supp.3d 1196, 1210 n.13 (M.D. Ala. 2016).

By contrast, the *Dunn* court noted, "The importance of public scrutiny of medical and mental-health care is greater in the prison and jail contexts than in an ordinary medical-malpractice case, to which [the non-party invoking the privilege] unconvincingly analogizes this case." *Id*. at 1207. The same is true here.

On the showing made, CCS fails to demonstrate that the documents at issue qualify for the narrow privilege created by the PSQIA or that, in these circumstances, as a matter of federal common law, this court should recognize a broader peer review privilege than that provided by the PSQIA.

## V. Conclusion

For the foregoing reasons, treating the instant discovery dispute as a motion by Ali to compel discovery of unredacted versions of the Supervisor's Review and the spreadsheet from the State Defendants and peer review materials concerning Dr. Drohan and Nurse Practitioner Foster from CCS, I **GRANT** the motion and **ORDER** that the State Defendants and CCS produce those documents to Ali, pursuant to the existing Confidentiality Order within 14 days of the entry of this order.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 21st day of January, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge