UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SADIYA ALI, on behalf of A.I., a A.I., <br>     Plaintiff <br> v. <br> <br> LONG CREEK YOUTH DEVELOPMENT CENTER, MAINE DEPARTMENT OF CORRECTIONS, JOSEPH FITZPATRICK, Commissioner of Maine Department of Corrections; CAROLINE RAYMOND, Superintendent of Long Creek Youth Development Center; MICHAEL A. MULLIN, Corrections officer at Long Creek Youth Development Center; DANIEL A. FERRANTE, Corrections officer at Long Creak Youth Development Center; CORRECT CARE SOLUTIONS, LLC, medical care provider at Long Creek Youth Development Center, <br> <br>     Defendants | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> *    2:18-CV-00109-JAW <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

## CONSENT REQUEST FOR APPROVAL OF SETTLEMENT

NOW COMES Plaintiff, Sadiya Ali, on behalf of her minor child, A.I., under oath, and respectfully moves that this Honorable Court approve the settlement on behalf of a minor pursuant to Local Rule 41.2. Counsel for the Plaintiff has consulted with counsel for the Long Creek Youth Development Center ("Long Creek"), the Commissioner of the Maine Department of Corrections ("DOC"), the Superintendent of Long Creek, and individual officers Michael Mullin and Daniel Ferrante (collectively, "the State Defendants"); as well as counsel for Correct Care Solutions ("CCS"),[1] each of whom consent to the relief requested in this motion.

---

[1] Correct Care Solutions is now doing business as Wellpath. For simplicity, this motion continues to refer to this company as Correct Care Solutions or CCS.

1. This lawsuit arises from A.I.'s detention at Long Creek in 2017[2], and alleges constitutional and statutory violations by the State Defendants; as well as deliberately indifferent medical care by CCS.

2. On March 14, 2018, A.I., through his parent and next friend Sadiya Ali, filed a complaint pursuing the following legal claims in Federal court:

   a. Excessive force against a pretrial detainee in violation of the Fourteenth Amendment, against Officers Mullin and Ferrante (and related claims);

   b. Discrimination against A.I. because of his disability in violation of the Americans with Disabilities Act, against Long Creek and DOC officials;

   c. Deliberately indifferent medical care in violation of the Fourteenth Amendment, by CCS. *See generally* Compl., ECF No. 1 (Mar. 14, 2019).

3. Plaintiff alleges the following in support of her claims. The allegations set forth below are largely disputed by both the State and CCS Defendants

   a. On July 26, 2017, when A.I. was only 11 years old, Long Creek officers forced his head into a bare metal bedframe and knocked out his two front teeth. In the lead-up to this event, Long Creek administrators and medical providers disregarded policies governing treatment and accommodations for youth with disabilities, including youth with psychiatric disabilities. *See* Policy Nos. 13.5, 13.6, 13.12, 14.3. Among other things, these policies require DOC to provide a treatment plan for any youth with disabilities to address adaptation to the correctional environment, medication, exercise, and other accommodations. However, Long Creek and its medical providers failed to

---

[2] Plaintiff A.I. was born in 2005 and was 11 years old at the time the incident occurred. A.I. has never been adjudicated of any juvenile offense and all pending juvenile charges against him have been dismissed.

       provide medication or other therapeutic accommodations for A.I., instead isolating or disciplining A.I. for behaviors arising from his disability in the lead-up to the July 26, 2017 incident.

   b. On July 26, 2017, Long Creek officials locked A.I. in his cell as part of a time-out. When A.I. said he would "pop" the sprinkler in his cell, Long Creek staff sent two officers into A.I.'s room to remove all of his belongings. After the officers removed A.I.'s mattress, they imposed a restraint and forced A.I.'s head into a bare metal bed frame. The impact knocked out A.I.'s two front teeth—an event that caused both physical injury and emotional and mental trauma. Afterwards, the officers found one of A.I.'s front teeth on the floor of his cell. Long Creek staff and medical providers delayed urgent care by taking the time to shackle this 11-year-old for his trip to the hospital. A.I. did not see a dentist until six days after the incident, by which time it was far too late to re-implant A.I.'s recovered tooth.

   c. As a consequence of this incident, A.I. sustained physical injuries and significant emotional injuries. His medical bills for the emergency room visit and three outpatient dental visits total $1,489. These bills were paid under A.I.'s MaineCare benefits and the Treasurer for the State of Maine will need to be reimbursed $480.73 for related treatment upon settlement.

2. The State Defendants and CCS have raised several defenses that they contend would entitle them to summary judgment in this case. *See* State Defs.' Pre-Filing Conference Mem., ECF No. 85 (July 15, 2019); CCS Pre-Filing Conference Mem., ECF No. 86 (July 15, 2019). Specifically, the State Defendants contend, in relevant part, as follows:

> The undisputed evidence will show that, following a separate incident and after removing items from A.I.'s room in response to his threat to break his overhead sprinkler, A.I. spit at Defendants Mullins and Ferrante. Mullins and Ferrante attempted to turn A.I. around and, in the process, A.I. tripped over his bed and hit his mouth on the bare metal bed frame. While A.I.'s injury was both unfortunate and unintended, the force Mullins and Ferrante used was neither excessive nor negligent, and they are entitled to qualified immunity under federal law, and discretionary immunity under state law. The undisputed evidence will also demonstrate that the State Defendants did not, in the aftermath of the incident, exhibit deliberate indifference to a serious medical need, but rather that medical assistance was provided promptly once A.I.'s injury became apparent. Finally, the undisputed evidence will establish that the State Defendants at no point either refused or failed to reasonably accommodate A.I.'s Attention Deficit Hyperactivity Disorder, or otherwise violated the ADA so as to enable Plaintiff to maintain a cause of action against the State Defendants.

State Defs.' Pre-Filing Conference Mem. at 2, ECF No. 85 (July 15, 2019). CCS, in turn, contends that at all times it provided appropriate and timely medical, mental health and dental care to A.I., and maintains that Plaintiff failed to prove that a CCS policy or custom contributed to alleged constitutional violations. *See, e.g.*, CCS Pre-Filing Conference Mem. at 4-7, ECF No. 86 (July 15, 2019).

3.  After more than a year of discovery, including thousands of pages of written discovery and more than a dozen depositions, the parties participated in settlement negotiations before Judge Nancy Torresen on October 28, 2019. At the end of the settlement conference, the parties agreed on settlement terms to resolve the case, pending Court approval. Specifically, Defendants offered ▮▮▮▮▮ in total settlement of this claim. This amount includes $250,000 from the State Defendants, and ▮▮▮▮▮ from CCS. According to the Term Sheet, Payment of the final settlement amount will be made within 30 days of final approval and execution of the settlement.

4. In reaching this settlement, the undersigned attorneys represented A.I., through his parent and next friend Sadiya Ali. It is the opinion of Sadiya Ali that accepting the settlement to resolve A.I.'s claims is in the best interests of A.I., and that the proposed settlement is fair and just.

5. If this application is approved by the Court, most of the funds—▮▮▮▮▮—will be allocated for the exclusive benefit of A.I. $50,000 will be deducted from the total to cover attorney fees and expenses and to reimburse the State of Maine Medicaid system (MaineCare) for payment of medical bills. The amounts deducted from the total settlement will be expended as follows:

**Deducted Costs:**

Costs of Creating Special Needs Trust

| | |
|---|---|
| Nelson-Reade Law Office, P.C. | 4,430.00 |

Reimbursement for litigation expenses on depositions, interpreter costs, and other miscellaneous litigation expenses, paid by Berman & Simmons and the American Civil Liberties Union of Maine

| | |
|---|---|
| Berman & Simmons | 21,085.42 |
| American Civil Liberties Union of Maine | 10,707.62 |

Attorney fees

| | |
|---|---|
| American Civil Liberties Union of Maine | 13,296.23 |

| | |
|---|---|
| Maine Care Lien | 480.73 |
| **Total deducted** | **50,000.00** |

6. These deductions are reasonable. The majority of the deductions are to reimburse litigation costs and expenses paid out of pocket by Berman & Simmons and the ACLU of Maine, who are co-counsel representing the Plaintiff. Costs include filing fees, expert fees, interpreter fees, deposition transcripts, travel costs, and more. The amount paid to Nelson-Reade Law

5

Office, P.C. to create the special needs trust is also reasonable and consistent with prevailing rates for this specialized area of law. Finally, approximately $13,000—totaling less than ▉ percent of the settlement amount—will be deducted as attorney fees to the ACLU of Maine. This amount is reasonable in light of the hundreds of hours expended by counsel for the Plaintiff, amounting to more than $250,000 at counsel's billable rates, which were provided at no cost to the Plaintiff. Furthermore, the total settlement amount incorporated the Plaintiff's sizable claim for attorney fees, to which prevailing plaintiffs may be entitled under 42 U.S.C. §§ 1988, 12205. Attorney fees recovered by the ACLU of Maine will be used to pursue legal relief for other civil rights violations. The law firm of Berman and Simmons is taking no attorney fees and supplied all legal services pro bono.

7. The remaining settlement amount of ▉ will be for the exclusive use and benefit of A.I., and will be used to fund a special needs trust, a draft of which is attached to this application as Exhibit A.[3] Portland Trust Company, located in Portland, Maine, will serve as the Independent Trustee, and will have discretion to distribute funds in accordance with the terms of the trust, for the sole benefit of A.I.

8. If this application is approved by the Court, the funds in the special needs trust will be invested in an account managed by Portland Trust Company. This account will be managed in a conservative manner that will minimize risk to principal, consistent with the approach used by financial fiduciaries as governed by the State of Maine statutes and prudent investor guidelines. The investment decisions with regard to this account will be tailored to A.I.'s age and designed to achieve appropriate yields while minimizing risk.

---

[3] Exhibit A has been redacted to remove references to A.I.'s full name.

9. The proposed settlement and allocation of resources is intended to provide A.I. with the greatest long-term benefit. The funds in the trust will be managed by the Portland Trust Company, which will act as the institutional trustee. Portland Trust Company has developed a specialty in the management and administration of supplemental care trusts and is currently acting as Trustee and managing assets for a number of trusts of comparable size and complexity.

10. Sadiya Ali states that she has been informed of her right to request an in-person hearing on the motion for approval of settlement of this claim and she states that she does not wish to request such a hearing, being satisfied with the terms and conditions of the settlement described in this motion, which she has had orally translated to her and which she signs under oath.

11. Sadiya Ali's primary language is Somali. By signing below, Ms. Ali confirms that this motion was orally translated for her and that she understands and agrees to the representations and requests in this Agreement.

12. Plaintiff now seeks approval of: (1) the proposed settlement; (2) the establishment of the special needs trust; and (3) the investment and management of the funds allocated to A.I.

WHEREFORE, Plaintiff respectfully applies to this Honorable Court to approve this proposed settlement.

<u>December 6, 2019</u>     <u>/s/ Sadiya Ali</u>
Date          Sadiya Ali, Individually and as Parent and Next Friend of A.I.

STATE OF MAINE
CUMBERLAND, SS.

Personally appeared the above-named Sadiya Ali, known to me, this 6th day of December 2019, and swore the above statement to be true, and based on her personal knowledge, except where stated to be on information and belief, in which case, she believes the statements true.

        Before me,

        <u>/s/ Alison Beyea, Esq.</u>
        NOTARY PUBLIC
        Alison Beyea, Esq.
        Bar No. 8613

## CERTIFICATION OF TRANSLATION ACCURACY

Oral Translation of Motion for Approval of Settlement from English to Somali.

I, Abdimajid Sharif, a qualified court interpreter, hereby certify that the above-mentioned Motion has been orally translated to Sadiya Ali, and that, in my best judgment, the oral translation represents a true and correct translation of the Motion.

<u>December 6, 2019</u>             <u>/s/ Abdimajid Sharif</u>
Date                                 Abdimajid Sharif
                                     Court Interpreter

STATE OF MAINE
CUMBERLAND, SS.

Personally appeared the above-named Abdimajid Sharif, known to me, this 6th day of December 2019, and swore the above statement to be true.

                          Before me,

                          <u>/s/ Alison Beyea, Esq.</u>
                          NOTARY PUBLIC
                          Alison Beyea, Esq.
                          Bar No. 8613

Respectfully submitted,

/s/ Zachary L. Heiden
Zachary L. Heiden
ACLU of Maine Foundation
PO Box 7860
Portland, Maine 04112
(207) 619-6224
*heiden@aclumaine.org*

/s/ Emma E. Bond
Emma E. Bond
ACLU of Maine Foundation
PO Box 7860
Portland, Maine 04112
(207) 619-8687
*ebond@aclumaine.org*

/s/ Jodi L. Nofsinger
Jodi L. Nofsinger
Berman and Simmons
129 Lisbon Street
Lewiston, Maine 04240
(207) 784-7699
*jnofsinger@bermansimmons.com*

*Attorneys for Plaintiff, Sadiya Ali on behalf of A.I., a minor*

December 9, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2019, I electronically filed the CONSENT MOTION FOR APPROVAL OF MINOR SETTLEMENT with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Zachary L. Heiden
Zachary L. Heiden
ACLU of Maine Foundation
PO Box 7860
Portland, Maine 04112
(207) 619-6224
*E-mail: heiden@aclumaine.org*